UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| DAVID ABEL, JR., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>COMMISSIONER OF SOCIAL SECURITY, )<br>)<br>Defendant. ) | 2:23-CV-103-JEM |

## MEMORANDUM OPINION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 73 of the Federal Rules of Civil Procedure, and the consent of the parties [Doc. 15]. Now before the Court is Plaintiff's Opening Brief [Doc. 16]. David Abel, Jr. ("Plaintiff") seeks judicial review of the decision of the Administrative Law Judge ("ALJ"), the final decision of the Commissioner of Social Security ("Commissioner"). For the reasons set forth below, the Court will **SUSTAIN** Plaintiff's statement of errors [**Doc. 16**] and will **REMAND** the case for further consideration.

I.      PROCEDURAL HISTORY

On October 22, 2019, Plaintiff filed for Disability Insurance Benefits [Tr. 160] and Supplemental Security Income [*Id.* at 164] pursuant to Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401, 1381 *et seq*. Plaintiff claimed a period of disability that began on November 12, 2017 [*Id.* at 160, 164]. After his claim was denied initially [*id.* at 52–61] and upon reconsideration [*id.* at 66–71], Plaintiff requested a hearing before an ALJ [*id.* at 88–89]. A hearing was held on March 22, 2022, before ALJ James M. Dixon (hereinafter "ALJ Dixon" or "the ALJ") [*Id.* at 31–51]. On June 27, 2022, ALJ Dixon found Plaintiff not disabled [*Id.* at 16–26]. Plaintiff asked the Appeals Council to review the ALJ's decision [*Id.* at 157–58]. The Appeals Council

denied Plaintiff's request for review [*id.* at 1–7], making the ALJ's decision the final decision of the Commissioner.

Having exhausted his administrative remedies, Plaintiff filed a Complaint with this Court on August 21, 2023, seeking judicial review of the Commissioner's final decision under 42 U.S.C. § 405(g) [Doc. 1]. The parties have filed opposing briefs, and this matter is now ripe for adjudication [Docs. 16–18].

## II. DISABILITY ELIGIBILITY AND ALJ FINDINGS

"Disability" means an individual cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). An individual will only be considered disabled:

> [I]f his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id.* §§ 423(d)(2)(A), 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

1. If claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520).

A claimant's residual functional capacity ("RFC") is assessed between steps three and four and is "based on all the relevant medical and other evidence in [the claimant's] case record." 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e), 416.920(a)(4), 416.920(e). RFC is the most a claimant can do despite his limitations. *Id.* §§ 404.1545(a)(1), 416.945(a)(1).

The claimant bears the burden of proof at the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

Here, the ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2022.

2. The claimant has not engaged in substantial gainful activity since November 12, 2017, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairment: disorders of back discogenic and degenerative (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds

3

that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except lifting/carrying (including upward pulling) 50 pounds occasionally, 25 pounds frequently. Stand, walk, sit (with normal breaks) about six hours in an 8-hour workday, each. Unlimited pushing/pulling (including hand/foot controls) within exertional limitations. Occasional postural activities except no climbing of ladders, ropes, or scaffolds. No manipulative, visual, communicative, or environmental limitations.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on March 29, 1966, and was 51 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date. The claimant subsequently changed age category to advanced age (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (*See* SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from November 12, 2017, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

[Tr. 19–25].

## III. STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner, and whether the ALJ's findings are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*,

4

581 F.3d 399, 405 (6th Cir. 2009); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). In reviewing the Commissioner's decision, the Court must consider the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Hum. Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Additionally, the Supreme Court has explained that "'substantial evidence' is a 'term of art,'" and "whatever the meaning of 'substantial' in other settings, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019). Rather, substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* at 103 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). In determining whether an ALJ's findings are supported by substantial evidence, the Court does not try the case *de novo*, weigh the evidence, or make credibility determinations nor resolve conflicts in the evidence, nor decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In addition to considering whether the ALJ's decision is supported by substantial evidence, the Court must review whether the ALJ employed the correct legal criteria. It is grounds for reversal of a decision—even if supported by substantial evidence—where "the SSA fails to follow

5

its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006).

On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Hum. Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). Furthermore, the Court is not under any obligation to scour the record for errors not identified by the claimant and arguments not raised and supported in more than a perfunctory manner may be deemed waived. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (noting that conclusory claims of error without further argument or authority may be considered waived).

## IV. ANALYSIS

Plaintiff raises two issues on appeal: (1) that the ALJ erred in finding his hernia was not severe [Doc. 16 pp. 4–7] and (2) that the ALJ did not properly evaluate Plaintiff's subjective complaints and the sole medical opinion in the record [*Id.* at 7–11]. The Commissioner responds that substantial evidence supports (1) finding Plaintiff's hernia is non-severe and the ALJ otherwise considered Plaintiff's hernia in his RFC determination [Doc. 17 pp. 8–15]; and (2) the ALJ's evaluation of Plaintiff's symptoms and the medical opinion evidence [*Id.* at 16–23].

### A. Non-Severe Impairment Determination

Plaintiff argues that ALJ Dixon erred in finding Plaintiff's inguinal hernia was a non-severe impairment because medical evidence indicated that the hernia was present, and Plaintiff testified that the reason he declined surgical correction was because he could not afford it[1] [Doc. 16 pp. 4–6]. He contends that this error was not harmless because there is no other discussion of Plaintiff's hernia and therefore, no indication that the ALJ considered this non-severe impairment in his RFC

---

[1] The Court addresses ALJ Dixon's consideration of Plaintiff's ability to afford care in Part IV.B.

analysis [*Id.* at 6–7]. The Commissioner responds that the ALJ properly determined Plaintiff's hernia to be non-severe because he never received treatment for the condition, did not complain of any pain at the hearing, and was still able to work [Doc. 17 p. 8]. Further, the Commissioner contends that such an error would be harmless because the ALJ considered all severe and non-severe impairments when determining the RFC [*Id.* at 11–12].

In the Sixth Circuit, the severity determination is "a *de minimis* hurdle in the disability determination process." *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988). "[A]n impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education and experience." *Id.* The goal of the test is to "screen out totally groundless claims." *Farris v. Sec'y of Health & Hum. Servs.*, 773 F.2d 85, 89 (6th Cir. 1985). "Once the ALJ makes a finding of severity as to even one impairment, the ALJ 'must consider limitations and restrictions imposed by *all of an individual's impairments, even those that are not "severe."*'" *Smith v. Comm'r of Soc. Sec.*, No. 1:23-CV-00522, 2023 WL 8481582, at *3 (N.D. Ohio Nov. 14, 2023) (quoting SSR 96–8p, 1996 WL 374184 at *5 (July 2, 1996)), *report and recommendation adopted*, No. 1:23-CV-522, 2023 WL 8480084 (N.D. Ohio Dec. 7, 2023). "An erroneous finding of nonseverity at step two is therefore harmless where the ALJ properly considers nonsevere impairments at later steps." *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 852 (6th Cir. 2020) (citing *Maziarz v. Sec'y of Health & Hum. Servs.*, 837 F.2d 240, 244 (6th Cir. 1987)).

The Sixth Circuit has held that an ALJ's "express reference to [Social Security Ruling ("SSR")] 96-8p, along with her discussion of the functional limitations imposed by [plaintiff's] nonsevere impairments at step two of her analysis, fully support [the] conclusion that the ALJ complied with 20 C.F.R. § 416.945(e) and SSR 96-8p." *Id.* Courts in this Circuit have found the

7

ALJ "properly considered all of plaintiff's impairments when crafting the RFC" where "the ALJ makes clear that her decision is controlled by SSR 96-8p" and provides "subsequent assurance that she had 'considered the entire record and all symptoms.'" *Yost v. Comm'r of Soc. Sec.*, No. 1:23-CV-00699-JRA, 2024 WL 1054234, *7–8 (N.D. Ohio Jan. 26, 2024) (emphasis omitted) (citing *Emard*, 953 F.3d at 851–52); *see also Laura Q. v. Comm'r of Soc. Sec. Admin.*, No. 2:23-cv-131, 2024 WL 1170037 (S.D. Ohio Mar. 19, 2024) (finding the same).

Such is the case here. In his decision, ALJ Dixon noted that he "must consider all of the claimant's impairments including impairments that are not severe" and he cited to SSR 96-8p [Tr. 18]. At step two, he found that Plaintiff suffered from a severe impairment: disorders of back discogenic and degenerative [*Id.* at 20]. ALJ Dixon discussed Plaintiff's non-severe hernia, stating that Plaintiff reported, and imaging showed, a "moderate left inguinal hernia" [*Id.*]. In his RFC discussion, ALJ Dixon mentioned Plaintiff's hernia twice. He noted that Plaintiff's disability application alleged his left inguinal hernia limited his ability to work [*id.* at 21] as well as in reference to Dr. Uzzle's finding that Plaintiff had a moderate left inguinal hernia [*id.* at 22]. While the ALJ did not discuss at length Plaintiff's non-severe impairment in the residual-functional-capacity assessment, he was not required to do so under applicable Sixth Circuit law. Therefore, as the ALJ specifically cited to SSR 96-8p and discussed Plaintiff's inguinal hernia, the ALJ did not err in considering Plaintiff's non-severe impairment.

B.   **Consideration of Evidence**

Plaintiff argues that the ALJ did not properly evaluate the evidence beyond including "boiler-plate language" that does not meet the standard of analysis required by the regulations [Doc. 16 pp. 7–8]. He specifies that the ALJ misconstrued Plaintiff's testimony regarding his ability to afford medical care, did not explain what portions of the medical opinion he found to be

8

persuasive, relied upon his own evaluation of the medical evidence when formulating the RFC, and did not articulate what portions of the evidence supported finding Plaintiff capable of performing medium work [*Id.* at 7–11; Doc. 18 pp. 9–13]. The Commissioner maintains that the ALJ analyzed the medical opinion for consistency and supportability, compared Plaintiff's subjective complaints to the objective evidence and course of treatment, and formulated the RFC based on the evidence [Doc. 17 pp. 16–24].

The ALJ must "evaluate the persuasiveness of [the] medical opinions and prior administrative medical findings" using five factors, including the (1) supportability and (2) consistency of the opinions or findings, the medical source's (3) relationship with the claimant and (4) specialization, as well as (5) "other factors" such as the "medical source's familiarity with the other evidence in a claim" and their "understanding of [the SSA's] disability program's policies and evidentiary requirements." 20 C.F.R. § 404.1520c(a), (c). Of these five factors, "[t]he most important . . . are supportability and consistency." *Id.* § 404.1520c(a), (b)(2). "For these two factors, the ALJ is required to 'articulate how [they] considered the medical opinions and prior administrative medical findings' and specifically 'explain how [they] considered the supportability and consistency factors' in 'determin[ing] how persuasive [they] find a medical source's medical opinions or administrative medical findings to be.'" *Sparks v. Kijakazi*, No. 2:21-CV-102, 2022 WL 4546346, at *6 (E.D. Tenn. Sept. 28, 2022) (quoting 20 C.F.R. § 404.1520c(a), (b)(2)).

In this case, the only medical evidence on record is Dr. Jeffrey Uzzle's ("Dr. Uzzle") report and examination along with Plaintiff's own testimony. The ALJ found the opinion somewhat persuasive and explained that:

> Dr. Uzzle's own examination findings do not align with the overall normal objective evidence, which does not support a range of light exertion, as his opinion describes. In fact, the claimant's own candid testimony of his working, taking care of cabins, and performing

9

other odd jobs support less functional limitations than those posed by Dr. Uzzle.

[Tr. 23]. The ALJ discussed the consistency of Dr. Uzzle's report with the record by comparing it to Plaintiff's testimony that he works on cabins where he lives [*Id.*]. Similarly, the ALJ's decision discusses the supportability of Dr. Uzzle's opinion by noting that his conclusion is not corroborated by Dr. Uzzle's own findings. *See* 20 C.F.R. § 404.1520c(c)(1); *Elizabeth A. v. Comm'r of Soc. Sec. Admin.*, No. 2:22-CV-02313, 2023 WL 5924414, at *4 (S.D. Ohio Sept. 12, 2023) ("In other words, supportability addresses whether a medical professional has sufficient justification for their *own* conclusions." (citation omitted)). Therefore, ALJ Dixon considered the medical opinion evidence for consistency and supportability under 20 C.F.R. § 404.1520c(a), (c).

Plaintiff argues that the ALJ improperly evaluated his subjective complaints, and particularly misconstrued his testimony that he could not afford medical care and inflated Plaintiff's earnings [Doc. 16 pp. 7–10]. The Commissioner responds that substantial evidence supports the ALJ's evaluation of Plaintiff's subjective complaints [Doc. 17 pp. 18–21].

When evaluating the intensity, persistence, and limiting effects of a claimant's symptoms, the ALJ will review all the evidence in the record as well as seven factors including:

1. Daily activities;

2. The location, duration, frequency, and intensity of pain or other symptoms;

3. Factors that precipitate and aggravate the symptoms;

4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;

6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or

10

> her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
>
> 7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

SSR 16-3p, 2017 WL 5180304, at *7–8 (Oct. 25, 2017). ALJs are required to discuss any of the seven factors that relate to the claimant's impairment from the evidence of record. *Id.* at *8 ("We will consider other evidence to evaluate only the factors that are relevant to assessing the intensity, persistence, and limiting effects of the individual's symptoms."). "If there is no information in the evidence of record regarding one of the factors, [the ALJ] will not discuss that specific factor in the determination or decision because it is not relevant to the case." *Id.* "However, an ALJ is not 'required to discuss each piece of data in its opinion, so long as they consider the evidence as a whole and reach a reasoned conclusion.'" *Escobar v. Kijakazi*, No. 3:21-cv-372, 2023 WL 2769090, at *3 (E.D. Tenn. Mar. 31, 2023) (citation omitted).

ALJ Dixon found that "claimant's statement concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely consistent with the medical evidence and other evidence in the record" [Tr. 21]. The ALJ discussed Plaintiff's testimony at the hearing, including noting that Plaintiff is the sole caretaker for his two children, ages nine and twelve, performs odd jobs and takes care of cabins where he lives, and that Plaintiff has a vehicle, but it is currently broken down [*Id.*]. In his discussion, ALJ Dixon particularly focused on Plaintiff's testimony that he takes care of cabins where he lives, that Plaintiff's "medical records are suggestive that his ailments do not bother him to the point of seeking medical attention," and that he treats his pain with over-the-counter medication [*Id.* at 22].

As for Plaintiff's assertion that he could not afford medical care, "a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, unless a claimant simply has no way to afford or obtain treatment to remedy his condition." *Jones v. Astrue*, 808 F. Supp.

11

2d 993, 996 (E.D. Ky. 2011) (citations omitted). But "before drawing a negative inference from an individual's failure to 'seek or pursue regular medical treatment,' the ALJ must consider 'any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment,' *e.g.*, '[t]he individual may be unable to afford treatment and may not have access to free or low-cost medical services.'" *Broersma v. Comm'r of Soc. Sec.*, No. 1:22-CV-327, 2023 WL 6157191, at *4 (W.D. Mich. Sept. 21, 2023) (quoting *Dooley v. Comm'r of Soc. Sec.*, 656 F. App'x 113, 119 (6th Cir. 2016), and explaining that, although the Sixth Circuit decided *Dooley* under SSR 96-7p which was superseded by SSR 16-3p, it acknowledged that the relevant considerations also appear in the updated version of the regulations) (cleaned up and footnote omitted); *see also Wyrich v. Soc. Sec. Admin.*, No. 3:20-cv-00682, 2022 WL 526488, at *5–6 (M.D. Tenn. Feb. 22, 2022) ("The ALJ failed to follow SSA rules and regulations requiring him to consider reasons why Wyrich 'may not have pursued treatment' for his back pain and to 'explain how [he] considered [those] reasons . . . .'" (quoting SSR 16-3p, 2016 WL 1119029, at *9 (Mar. 16, 2016))) (alterations and omission in original). The ALJ here did not address in his decision Plaintiff's reasons for not pursuing treatment, particularly his testimony that he has not been able to afford medical care. At the hearing, the ALJ specifically asked Plaintiff whether he has "ever received any medical treatment other than perhaps for [his] fall a few decades ago?" to which Plaintiff responded "No. Because I can't afford to go to a doctor. I don't even have a regular doctor" [Tr. 39]. Further, Plaintiff testified that he currently earns about $500 a month, pays $500 per month in rent, and that his father helps cover the rest of his expenses [*Id.* at 43–44]. While the ALJ incorrectly noted in determining Plaintiff "has not engaged in substantial gainful activity since . . . the alleged onset date" that Plaintiff makes "about $700 a month" [*Id.* at 19], he does not mention anywhere else in the opinion

12

that Plaintiff could not afford medical care or otherwise explain Plaintiff's lack of care. Instead, the ALJ states that Plaintiff's "medical records are suggestive that his ailments do not bother him to the point of seeking medical attention," and that Plaintiff treats his pain with over-the-counter medication [*Id.* at 22]. "Where, as here, 'an ALJ fails to follow agency rules and regulations, we find a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record.'" *Wyrich*, 2022 WL 526488, at *6 (quoting *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 833 (6th Cir. 2016)). "Remand is therefore warranted for reconsideration of possible reasons why [Plaintiff] did not pursue treatment for his [impairments]." *Id.*; *see also Broersma*, 2023 WL 6157191, at *4 (finding the ALJ improperly drew a "negative inference" from the plaintiff's failure to seek medical care without considering the plaintiff's reasons for not doing so, including an inability to afford care).[2]

Plaintiff asserts that ALJ Dixon's opinion did not articulate what evidence supported medium versus light work [Doc. 16 p. 11]. The Commissioner responded that the RFC needs to be supported by evidence, but does not need to be supported by medical evidence and that Plaintiff fails to explain how the record conflicts with the ALJ's RFC [Doc. 17 pp. 21–23]. It is unclear

---

[2]    The Commissioner cites to caselaw that he argues supports an ALJ's decision to consider a plaintiff's lack of medical care in determining a plaintiff's credibility [Doc. 17 p. 20]. These cases, however, are inapposite from the case at bar. In one, the ALJ discussed in the decision the plaintiff's claim that he could not afford treatment and countered that claim with other evidence on the record. *Boothe v. Comm'r of Soc. Sec.*, No. 1:06-CV-00784, 2008 WL 281621, at *12 (S.D. Ohio Jan. 31, 2008). The other involved a plaintiff who missed medical appointments, refused medication, and claimed she had trouble affording medications due to lack of insurance and yet still received medical care while she lacked insurance. *See Presley v. Astrue*, No. 1:11-cv-327, 2012 WL 7356587, at *10–11 (E.D. Tenn. Sept. 7, 2012). Here, Plaintiff testified that he made only $500 a month, the exact amount he pays in rent, and that he does not have a primary doctor because he cannot afford to see one [Tr. 39, 43–44]. Unlike in *Boothe*, the ALJ did not consider this testimony when discussing Plaintiff's failure to seek medical treatment, *see Boothe*, 2008 WL 281621, and unlike in *Presley*, Plaintiff has not missed medical appointments or refused medication because he cannot afford medical care at all, and therefore has not sought medical treatment.

13

how the ALJ concluded that Plaintiff was capable of performing medium work. The only medical opinion in the record, Dr. Uzzle's report, found that Plaintiff was capable of light work, at most [Tr. 235–36]. *See* 20 C.F.R. § 404.1545(a)(1) ("[A claimant's] residual functional capacity is the most [they] can still do despite [their] limitations."); 20 C.F.R. § 220.132 (defining light work as work requiring "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds"). Yet, ALJ Dixon's RFC assessment found Plaintiff capable of medium work. *See* 20 C.F.R. § 220.132 ("Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds."). While the ALJ found Dr. Uzzle's opinion "somewhat persuasive," he did not explain which aspects of the report or examination findings supported finding Plaintiff capable of medium exertion work [Tr. 23]. Further, although Plaintiff testified that he has been taking care of cabins and performing other odd jobs, the ALJ did not inquire what level of exertion was required to perform these jobs and therefore has no basis to support his determination that Plaintiff is capable of medium work in contradiction with Dr. Uzzle's medical opinion that Plaintiff is capable of light work [*Id.* at 42–43]. A "[c]ourt 'may not uphold an ALJ's decision, even if there is enough evidence in the record to support it, if the decision fails to provide an accurate and logical bridge between the evidence and the result.'" *Gross v. Comm'r of Soc. Sec.*, 247 F. Supp. 3d 824, 829–30 (E.D. Mich. 2017) (quoting *Pollaccia v. Comm'r of Soc. Sec.*, No. 09-cv-14438, 2011 WL 281044, at *6 (E.D. Mich. Jan. 6, 2011)). "[I]it is unclear on what the ALJ based [his] ultimate RFC conclusion, and []he draws no accurate and logical bridge to instruct the Court of [his] reasoning," meaning the Court cannot uphold the ALJ's decision. *Id.* at 830; *see also Tucker v. Comm'r of Soc. Sec.*, 775 F. App'x 220, 226 (6th Cir. 2019) (explaining that, in assessing a plaintiff's RFC, "the administrative law judge must make a connection between the evidence relied on and the conclusion reached").

## V.    CONCLUSION

For the reasons explained, the Court will **SUSTAIN** Plaintiff's statement of errors [**Doc. 16**] and will **REMAND** the decision of the Commissioner for further consideration.

**ORDER ACCORDINGLY.**

ENTER:

/s/ Jill E. McCook
Jill E. McCook
United States Magistrate Judge